OPINION OF THE COURT
VAN ANTWERPEN, Circuit Judge.
Appellant Theodore Tinsley was convicted by a jury on July 16, 2004, of one count each of gun possession in furtherance of a drug trafficking crime (count 1), felon in possession (count 2), and possession of crack cocaine with intent to distribute (count 3). On October 22, 2004, the District Court sentenced Tinsley to 197 months imprisonment. This appeal stems first from the District Court’s decision, before trial, to disqualify Tinsley’s retained counsel on the ground that counsel might be called as a witness to describe having seen, handled, and discussed a similar gun in the possession of Tinsley’s girlfriend four to five years prior to the charged offenses. Second, Tinsley appeals the District Court’s exclusion, as hearsay, of certain testimony by a defense witness regarding threatening phone calls received by Tinsley, the contents of which he recounted to the witness. We have jurisdiction pursuant to 28 U.S.C. § 1291, and will affirm.
I.
Because we write solely for the benefit of the parties, we state the facts only as they pertain to our analysis.
In the early morning of October 17, 2003, Tinsley was spotted driving by two law enforcement officers who knew from recent encounters that Tinsley had a suspended license; they also noticed that his license plate was not illuminated as required by law. After briefly attempting to elude the officers, Tinsley was pulled over *433 to the side of the road. When ordered to exit the car, Tinsley refused, became verbally and physically agitated, and assaulted the officers. During the ensuing struggle, a Tech-9 machine pistol fell from his waistband onto the street. Eventually the officers and reinforcements succeeded in subduing Tinsley and placing him in a patrol car, where Tinsley broke a window and bent the door frame. A search of Tinsley’s clothing revealed about 16-18 grams of crack cocaine. No drug paraphernalia was found on his person or in his vehicle. The gun was recovered and found to be fully loaded, with the serial number removed.
Tinsley was indicted on December 3, 2003, by a federal grand jury on three counts: Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and Possession with intent to distribute more than 5 grams of cocaine base (“crack”), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(l)(B)(iii). In the District Court for the Eastern District of Pennsylvania, which had jurisdiction pursuant to 18 U.S.C. § 3231, Tinsley pleaded not guilty to all three counts of the indictment.
Following an initial appearance, Tinsley’s retained counsel informed both the Government and the Bureau of Alcohol, Tobacco, and Firearms, that counsel had seen, about four to five years earlier, a Tech-9 while at Tinsley’s girlfriend’s home. Counsel said he had handled the pistol and had discussed it with Tinsley’s girlfriend. Following this disclosure, Tinsley’s counsel refused the Government’s request that he withdraw voluntarily from the case. The Government then filed a motion to preclude counsel from representing Tinsley, on the ground that he might be called as a material witness in the case if, for example, Tinsley claimed the gun had been planted by the police officers during his arrest. The District Court held a hearing at which it heard argument from both sides, and ultimately granted the Government’s motion to preclude, stating that “while it [counsel’s potential testimony] does not go directly to an element of the offense against this defendant, it is relevant and can be relevant for purposes of proving the case by the government.” Tinsley was subsequently represented by the Federal Defender’s Association.
During the first phase of a four-day bifurcated trial, Tinsley presented as a defense to counts 1 and 3 that he was carrying the gun for self-defense, not in furtherance of a drug trafficking crime. He presented a witness, Kadedra Holmes, who testified that Tinsley had been shot at several months prior to his arrest while attempting to break up a fight at a nightclub. However, the District Court refused, on the grounds of inadmissible hearsay, to allow Holmes to testify that before his arrest, she was in Tinsley’s presence when he received several phone calls allegedly threatening his life. She did not hear the content of the calls personally, but Tinsley related the calls to her. The jury subsequently convicted Tinsley of both counts 1 and 3, and in the second phase of the trial, convicted him of count 2, on the basis of a stipulated previous felony conviction. On October 22, 2004, the District Court sentenced Tinsley to 197 months imprisonment, comprising 137 months for counts 1 and 3, and 60 months to be served consecutively for count 2, and eight years of supervised release. Tinsley now appeals both the District Court’s pre-trial disqualification of his attorney, and the exclusion on hearsay grounds of Holmes’s testimony regarding the threatening phone calls.
*434 II.
In reviewing a District Court’s decision to disqualify an attorney, “First, we exercise plenary review to determine whether the district court’s disqualification was arbitrary — ‘the product of a failure to balance proper considerations of judicial administration against the right to counsel.’ ” United States v. Stewart, 185 F.3d 112, 120 (3d Cir.1999) (quoting United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir.1996)). Second, if the decision was not arbitrary, we then review for abuse of discretion. Id. We review the District Court’s application of the Federal Rules of Evidence for abuse of discretion. United States v. Saada, 212 F.3d 210, 220 (3d Cir.2000).
III.
A. Disqualification of Counsel
In its Motion to Preclude, the Government argued that because Tinsley’s counsel had previously seen a similar gun in the possession of Tinsley’s girlfriend, counsel might be called as a material witness to testify to the sighting. For example, Tinsley might claim that the gun had been planted during his arrest, at which point the Government would seek Tinsley’s counsel’s testimony. This, the Government argued, would inevitably create a conflict of interest on the part of Tinsley’s counsel. Tinsley argued in response that the conflict was only potential, and that the origin of the gun was not a matter at issue in the trial, therefore his counsel was not a “necessary” witness and should not be disqualified. For the reasons that follow, we find that the District Court did not err in disqualifying Tinsley’s counsel on the basis of a potential conflict of interest.
As stated above, our inquiry is two-tiered. We first review whether the District Court’s decision was arbitrary. We look for such elements as a reasoned decision and a developed record. Voigt, 89 F.3d at 1074. Second, if the decision was not arbitrary, we ask whether the District Court abused its discretion in disqualifying Tinsley’s counsel. For the reasons set forth below, the District Court’s decision was neither arbitrary nor an abuse of discretion.
Under United States v. Merlino, 349 F.3d 144 (3d Cir.2003), we find that the decision to disqualify Tinsley’s counsel was not arbitrary — “the product of a failure to balance proper considerations of judicial administration against the right to counsel.’ ” Stewart, 185 F.3d at 120 (quoting Voigt, 89 F.3d at 1074). Merlino involved a lawyer who, on behalf of his client, visited a potential government witness in prison, passed messages suggesting that the witness could return to Philadelphia without danger from the defendant’s crime organization, discussed the identity of the new crime boss, and attempted to give the witness money. The District Court in Merlino considered all the evidence the parties wished to submit, questioned the parties, and heard oral argument before disqualifying the lawyer. 349 F.3d at 150. Here, the District Court was presented with a factually-detailed motion from the Government; the court heard oral argument from both sides; Tinsley’s counsel did not dispute that he had seen the gun and spoken with Tinsley’s girlfriend about it; and the court identified the potential— indeed likely — conflict of interest that would arise even if Tinsley’s counsel was not called as a witness. Similarly, as Tinsley admitted at argument, there were no disputed facts regarding the earlier incident, and therefore the lack of factual findings is not surprising.
All of these factors weigh heavily in favor of finding that the District Court’s decision was not arbitrary. We are also reassured by the District Court’s detailed *435 questioning of Tinsley to ensure that he would not be unreasonably adversely-impacted by the need to obtain new counsel. It is evident from the record that the District Court was concerned about the defendant’s right to counsel as well as the conflict of interest, and under such circumstances we will not elevate form over substance and require a District Judge to state explicitly his or her cognizance of a defendant’s Sixth Amendment right to counsel,[1] or to state “I am now balancing the defendant’s right to counsel against considerations of judicial administration.”[2]
We recognize that Merlino is potentially distinguishable because of, for example, the lack of a written memorandum of decision here, and the fact that the relevant defendant in Merlino had only one of his two retained lawyers disqualified and was therefore never deprived of both his counsel of choice. These are small distinctions however, and nonetheless, we find that Merlino’s rationale easily extends to cover the case at bar.[3]
The second step of our inquiry asks whether the District Court’s non-arbitrary decision to disqualify Tinsley’s counsel was nonetheless an abuse of discretion. “A criminal defendant’s Sixth Amendment right to counsel of one’s choice is not absolute; ‘where considerations of judicial administration supervene, the presumption in favor of counsel of choice is rebutted and the right must give way.’ ” Merlino, 349 F.3d at 150 (quoting Voigt, 89 F.3d at 1074). Tinsley argues that the District Court’s decision was erroneous because his counsel was not a “necessary” witness. We have never imposed such a requirement. Instead, in Merlino we stated that the lawyer could have been appropriately disqualified because he might be called as a witness, and “disqualification may also be appropriate where it is based solely on a lawyer’s personal knowledge of events likely to be presented at trial, even if the lawyer is unlikely to be called as a witness.” Id. at 152 (emphasis added). This case is no different. The District Court correctly found that a conflict was present because Tinsley’s counsel might be called as a witness if it became necessary to prove Tinsley’s previous possession of the gun. If he remained in the case, we do not see how Tinsley’s counsel could ethically decide whether or not to strategically present a planted-evidence defense. See Merlino, 349 F.3d at 152 (noting that counsel was put in a “compromised position” given that the defendant “employed a ‘mob-denial’ defense at trial”); Stewart, 185 F.3d at 122 (“[T]he district court could not accept [the defendant’s] assurances that he would not pursue an alternate strategy at trial.”). We find that the District Court did not abuse its discretion in disqualifying Tinsley’s counsel based on this conflict.
*436 B. Hearsay Evidence
Tinsley next challenges the District Court’s exclusion of Kadedra Holmes’s testimony regarding what Tinsley told her about the allegedly threatening phone calls he received before his arrest. Tinsley alleges that this testimony was admissible as non-hearsay evidence as it showed Tinsley’s state of mind (fear), and was not being used for the truth of the matter (that Tinsley was in fact being threatened). The District Court excluded this testimony as inadmissible hearsay. We find that the District Court did not abuse its discretion.
Tinsley offers on appeal two justifications for the testimony — state of mind, under Fed.R.Evid. 803(3), and excited utterance, under Fed.R.Evid. 803(2). While we conclude that Holmes’s testimony might ultimately have been admissible under one of these exceptions, the decision to exclude was well within the District Court’s discretion given the minimal proffer made at the time. Fed.R.Evid. 803(3) permits “statement[s] of the declarant’s then existing state of mind, emotion, sensation ... but not including a statement of memory or belief to prove the fact remembered or believed.... ” Before the District Court, however, Tinsley argued that Holmes’s testimony went “to [Tinsley’s] state of mind in terms of what he reasonably believed.” (emphasis added). The proffer also did not include any indication that Holmes would testify that Tinsley said, “I’m afraid” — an actual statement of his state of mind. There was no abuse of discretion in excluding evidence based on this proffer.
Tinsley also argues that Holmes’s testimony was admissible under Fed. R.Evid. 802(2), which permits “statements] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” Before the District Court, Tinsley argued only that “even if, as counsel suggests, there were a hearsay issue here, this is clearly an excited utterance. But that is ... not really what I need to offer it for. Just for his state of mind.... ” Whether or not Holmes’s testimony ultimately would be admissible under the excited utterance exception, we cannot conclude that the District Court abused its discretion in rejecting such a limited proffer that provided no foundation for applying this hearsay exception. We will therefore affirm the District Court’s refusal to admit Holmes’s testimony on this point.
IV.
For the foregoing reasons, we conclude that the District Court properly disqualified Tinsley’s retained counsel and excluded Kadedra Holmes’s hearsay testimony regarding threatening phone calls. We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.

. We reject Tinsley's assertion at argument that the District Court was not aware that Tinsley had a "right to counsel of choice.” We also note that the Government explicitly cited Merlino — our leading case on the subject of disqualification of counsel of choice and in general — in its disqualification motion.

. In an analogous context, we have not hesitated to find satisfied the requisite balancing of probative value and potential prejudicial impact under Fed.R.Evid. 403, even where the District Court does not explicitly go through a balancing inquiry. See, e.g., Ansell v. Green Acres Contracting Co., 347 F.3d 515 (3d Cir.2003).

. Here, the potential conflict regarding Tinsley’s counsel was apparently known at the time of Tinsley’s arraignment, and the Federal Defenders Association was actually appointed to represent him for a period of time. His counsel’s potential disqualification can therefore hardly be said to have caught Tinsley completely off-guard.